UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LEONARD MCQUAY,

    Plaintiff,

    v.　　　　　　　　　　　　　　　　　CAUSE NO. 3:23-CV-436-JD-SJF

LIAW, et al.,

    Defendants.

## OPINION AND ORDER

Leonard McQuay, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding "against Lt. Bradford and Sgt. Thomas in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his need to urinate during the transport on November 4, 2022, in violation of the Eighth Amendment[.]" ECF 13 at 18. Second, he is proceeding "against Dr. Andrew Liaw, Danielle Krolikowski, LPN, Sandra Allen, LPN, and Marne Juestel, A.P./R.N./N.P in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his serious bladder, kidney, prostate and/or stomach issues from November 4, 2022, to December 22, 2022, in violation of the Eighth Amendment[.]" *Id.* The defendants filed a joint motion for summary judgment, arguing McQuay did not exhaust his administrative remedies before filing this lawsuit. ECF 30. McQuay filed a response, and the defendants filed a reply. ECF 38, 39. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process,

exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). However, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The defendants argue McQuay did not exhaust his available administrative remedies before filing this lawsuit because he never submitted any timely grievance. ECF 31 at 5-9. Specifically, the defendants provide evidence showing the following facts: On May 1, 2023, McQuay submitted a two-page grievance complaining the defendants refused to let him urinate during his November 4 transport and provided him inadequate medical care. ECF 30-1 at 35-36. On both pages of the grievance, McQuay explained it was being submitted late because he submitted an earlier grievance from the hospital which was lost in his mailbag. *Id.* On May 12, 2023, the grievance office rejected McQuay's May 1 grievance as untimely because "Per policy 00-02-301, Offender Grievance Process, you have 10 business days, from the date of incident to file a grievance." *Id.* at 34.

3

Here, the evidence provided by the defendants shows the grievance office made McQuay's administrative remedies unavailable by rejecting his May 1 grievance as untimely without responding to his request for a time limit extension. Specifically, the Offender Grievance Process provides that: "If there are extenuating circumstances which caused the offender a delay in submitting the grievance form within the time frames, the offender must document and submit the reason for the delay on a separate piece of paper with signature and date, and include with the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review. The Warden/designee shall approve or deny such offender delay requests." ECF 30-1 at 21. McQuay followed this procedure by explaining on both pages of his May 1 grievance that it was being submitted late due to his earlier grievance being lost in his mailbag. ECF 30-1 at 35-36. The grievance office did not consider or acknowledge McQuay's request for a time limit extension, but instead rejected his May 1 grievance as untimely simply because it was submitted more than ten days after the incident complained of. *Id.* at 34. This conduct by the grievance office violated the terms of the Offender Grievance Process and left McQuay without any further available administrative remedy to exhaust.

The defendants raise several arguments that must be addressed. First, the defendants argue the grievance office properly rejected McQuay's May 1 grievance as untimely because he did not show good cause for its untimely filing, as he never submitted any earlier grievances complaining his mailbag was lost or his grievances went missing. ECF 31 at 6-7. But the court cannot now make a determination whether

4

McQuay showed good cause for his untimely filing, as it's undisputed the grievance office rejected McQuay's May 1 grievance as untimely without even addressing whether he showed good cause. Regardless, the Offender Grievance Process did not require McQuay to submit a grievance regarding his lost mailbag; rather, the Offender Grievance Process only required him to explain in writing why his May 1 grievance was submitted late, which he did. Second, the defendants argue that if McQuay submitted an earlier grievance from the hospital which was lost in his mailbag, he should have notified the Grievance Specialist of that fact. *Id.* at 7. But the fact that McQuay may have had available remedies to pursue during his November 2022 hospitalization doesn't change the fact that the grievance office made his administrative remedies unavailable in May 2023 by ignoring his request for a time limit extension. And while McQuay's failure to notify the Grievance Specialist of the lack of response to his earlier grievance could have been a valid reason for denying his request for a time limit extension, the grievance office never made that determination but instead rejected his May 1 grievance as untimely without explanation. Lastly, the defendants argue that once the grievance office rejected McQuay's May 1 grievance as untimely, McQuay should have revised and resubmitted the grievance with an additional explanation for why the grievance was submitted late. ECF 31 at 7-8. But as it's undisputed that McQuay already explained why his grievance was late and requested a time limit extension which was ignored by the grievance office, there's no requirement in the Offender Grievance Process that McQuay resubmit his grievance with an additional explanation for why the grievance was late.

Accordingly, the undisputed facts show the grievance office made McQuay's administrative remedies unavailable by rejecting his May 1 grievance as untimely without acknowledging or responding to his request for a time limit extension. The defendants have therefore not met their burden to show McQuay had available administrative remedies to exhaust at the time he filed this lawsuit.

For these reasons, the defendants' motion for summary judgment (ECF 30) is DENIED.

SO ORDERED on February 25, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT